# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED ABDALLA, | CV F 02 5453 REC SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 71) |
| M.C. KRAMER, et. al., | |
| Defendants. | |

Mohammed Abdalla ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A. RELEVANT PROCEDURAL HISTORY**

Plaintiff filed this action on April 23, 2002. The Complaint was dismissed with leave to amend on May 17, 2002. Plaintiff filed a First Amended Complaint on June 17, 2002. The Court dismissed the Complaint with leave to amend again on July 2, 2002, finding that Plaintiff had only stated an Eighth Amendment claim against Defendants Sydenstricker, Witwer, Bird, Rexin, Comiso and Daly. Plaintiff informed the Court that he wished to proceed on his Eighth Amendment claim against those Defendants. Thus, the Court issued Findings and Recommendations that all other claims be dismissed from the action on November 19, 2002. On

April 11, 2006, the District Court adopted the Findings and Recommendations.

According to the Court docket, Defendants Sydenstricker, Witwer and Bird waived service of the Amended Complaint on September 23, 2004. However, service on Defendants Rexin, Comiso and Daly were returned unexecuted. Defendants Sydenstricker, Witwer and Bird filed the instant Motion for Summary Judgment on July 5, 2005. Defendant Rexin was later served and filed an Answer on November 23, 2005. However, service was again returned unexecuted for Defendants Comiso and Daly.

On October 5, 2005, the Court issued an Order to Show Cause why Defendants Daly and Comiso should not be dismissed from the action. Plaintiff responded to the Order on October 21, 2005, providing further information on the whereabouts of Defendant Daly and moving for dismissal of Defendant Comiso from the action.[1] (Doc. 83.)

The Court Ordered that service on Defendant Daly be re-attempted by the U.S. Marshal. On March 6, 2006, service on Defendant Daly was again returned unexecuted. The Court issued a final Order to Show Cause regarding Defendant Daly on March 31, 2006.

**B.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

---

[1] Findings and Recommendations that Plaintiff's request be granted will issue separately.

2

an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

**C.  UNDISPUTED FACTS**[2]

1. Plaintiff suffered from back pain beginning in late 1997, and while working for the Prison Industry Authority ("PIA"), at California Department of Corrections.
2. Defendant Bird saw Plaintiff on September 24, 1997, for complaints of hip pain. Plaintiff was referred to and examined by Dr. Douglas Rexin.
3. Dr. Rexin was able to provide pain relief for Plaintiff's by prescribing Naproxen 2x/day.[3]
4. On November 15, 2000, while working at the PIA, at CDC, Sierra Conservation Center, Plaintiff injured himself while lifting a box of clothing.
5. Defendant Bird is currently working as a retired annuitant with the CDC, and was

---

[2] Although Plaintiff filed an Opposition to the Motion for Summary Judgment, he neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts.  Local Rule 56-260(b).  Therefore, the Court compiled the statement of undisputed facts from Defendants' statement of undisputed facts and Plaintiff's verified Amended Complaint and Opposition.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge).  Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Amended Complaint and Opposition are not contradictory.  Accordingly, these facts are undisputed solely for the purpose of the instant Motion for Summary Judgment.

[3] The Court presumes Plaintiff means "Naproxin" however, the Amended Complaint spells the medication as "Napzoxin."  Amended Complaint at 11, ¶ 16.

4

employed in this capacity at the time of Plaintiff's injury on November 15, 2000.

6. Plaintiff was examined by Dr. Shapiro for his complaints of back pain on November 15, 2000, after presenting to the clinic with a "pass" and showing that "pass" to MTA Stanley.

7. On November 20, 2000, Plaintiff presented to the health clinic but was informed by Defendant Bird the physician had a full schedule and that she would have to add him to the sick call schedule for the next day.

8. Plaintiff was seen the next day, November 21, 2000, by Defendant Dr. Witwer for his complaints of back and leg pain. Defendant prescribed prednisone and indicated Plaintiff should return in 1 week for a followup to see if an MRI was needed.

9. Defendant Witwer is currently employed as a Physician/Surgeon with CDC, where has been employed for 11 years. His responsibilities include examining patients, diagnosing, prescribing, and administering medical treatments. He also participates in the informal and first level inmate appeals process.

10. On November 28, 2000, Plaintiff was examined by Dr. Comiso for complaints of back pain, numbness, and tingling in his right leg. On November 29, 2000, Dr. Comiso ordered an MRI of Plaintiff's lumbar spine.

11. On December 7, 2000, an X-ray was taken of Plaintiff's lumbar spine.

12. On December 22, 2000, an MRI was taken of Plaintiff's lumber spine at Dr. Comiso's request.

13. On December 26, 2000, Plaintiff was examined by Defendant Witwer for complaints of lower back pain and lower right leg pain with some numbness to the right foot.

14. Plaintiff was seen by Defendant Sydenstricker on January 8, 2001, requesting the results of the MRI taken on December 22, 2000.

15. Defendant Sydenstricker is currently retired from CDC and was employed by CDC from January 1998 to January 2005.

16. On January 11, 2001, Plaintiff was seen by Defendant Sydenstricker as a followup appointment. At that time, Plaintiff's MRI results were available. Defendant

       Sydenstricker then requested a neurosurgical consultation concerning Plaintiff's lumbar spine.

17. On January 22, 2001, Defendant Sydenstricker wrote Plaintiff a prescription for Motrin 400 mg for his complaints of pain, and also ordered Plaintiff a neurological consult.

18. On February 1, 2001, and February 14, 2001, Plaintiff was seen by Dr. Daly, and an order for a neurosurgical consult was written on both visits; Plaintiff was also prescribed Neurontin for pain.

19. On March 15, 2001, Plaintiff received a neurosurgical consult evaluation by Dr. David Bybee regarding his lumbar spine.

20. On May 2, 2001, Plaintiff underwent surgery for a right lumbar discectomy.

21. On May 4, 2001, Plaintiff was examined by Defendant Sydenstricker for complaints of residual pain involving the surgical site of the lumbar discectomy.

22. On May 8, 2001, Plaintiff saw Dr. Daly for a followup and was prescribed "Nevrontin [sic]."[4]

23. On August 16, 2001, Plaintiff was examined by Dr. John Ziomek, a podiatrist, for complaints of back pain. Dr. Ziomek recommended a neurosurgical consult.

24. On August 24, 2001, a formal request for a (post-surgical) MRI of Plaintiff's spine was submitted at the request of Dr. L. Iannone.

25. On October 14, 2001, a (post-surgical) MRI of Plaintiff's spine was taken at the request of Dr. L. Iannone.

26. On November 28, 2001, Plaintiff was examined by a pain management specialist Dr. Jeff Jones who recommended Plaintiff undergo epidural injection procedures to his lumbar spine, and performed the initial procedure at that time.

27. On January 24, 2002, Plaintiff under went second epidural injection procedures by Dr. Jeff Jones.

---

[4] Amended Complaint at 18, ¶ 46.

28. On March 6, 2002, Plaintiff underwent a third epidural injection procedure by Dr. Jeff Jones.

29. On March 26, 2002, Plaintiff was examined by Dr. Daly regarding lumbar spine problems.

30. On May 1, 2002, Plaintiff underwent an epidural neurolysis injection procedure performed by Dr. Jeff Jones.

31. On August 13, 2002, Dr. David Bybee noted that Plaintiff had received 50 percent relief of his back pain following the epidural injection procedures.

32. On September 19, 2002, Plaintiff received another epidural procedure performed by Dr. Jeff Jones.

33. Inmates are eligible for Worker's Compensation benefits for injuries sustained while performing assigned work while imprisoned.

34. Plaintiff filed a Worker's Compensation Claim application with the State Compensation Insurance Fund located in Sacramento, CA on August 1, 2003.

35. Plaintiff's claim application for Worker's Compensation benefits was accepted by the State Compensation Insurance Fund on June 28, 2005.

**D. ANALYSIS**

   *1. Summary of Complaint*

Plaintiff alleges that he suffers from a severe and persistent back condition that began in August of 1997. Dr. Rexin was able to provide Plaintiff with pain relief by prescribing him"Napzoxin [sic]." (Amended Complaint at ¶16.) On November 15, 2000, while working for the Prison Industry Authority, Plaintiff experienced severe pain and requested permission to go to the clinic; Plaintiff was seen by Dr. Shapiro who prescribed "Naproxen" and "Methocarboamol" for pain. Id. at ¶18. Plaintiff's pain, however, got worse and thus he went back to the clinic on November 20, 2000, where he was turned away by Defendant MTA Bird. Id. at ¶ 19.

Plaintiff states that he visited the clinic several times in the subsequent years and was seen by Defendant Drs. Witwer and Sydenstricker, in addition to Drs. Daly and Camiso. Plaintiff alleges that these Defendants were deliberately indifferent to his medical needs because they did

7

not provide him with adequate medical attention as he continued to experience pain.  Plaintiff contends that this delay/denial of treatment constitutes cruel and unusual punishment.  Plaintiff complained about the inadequate treatment in his inmate appeals.  (Amended Complaint.) Plaintiff prays for medical treatment, compensatory damages in an amount according to proof, costs and expenses, and any other relief the court deems just and proper. Id.

### 2. Eighth Amendment Claim for Relief

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (*citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), *citing* Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

1 1990).

2    Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S.
3 at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff must
4 show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per*
5 *curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th
6 Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of
7 State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*).  Moreover, mere
8 differences of opinion between a prisoner and prison medical staff as to proper medical care do
9 not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996);
10 Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th
11 Cir.1981).

   ***a. Defendant MTA Mina Bird***

   Plaintiff alleges that Defendant Bird was deliberately indifferent to his medical needs because she refused to allow him to see a physician immediately when he presented to the health clinic on November 15, 2000.

   Defendants provide evidence that on November 15, 2000, the date Plaintiff experienced the onset of severe pain, Plaintiff presented a pass to MTA Stanley and was seen by Dr. Shapiro who prescribed medication to alleviate his pain.  (Ex. C, LL, Exhibits to Motion for Summary Judgment [hereinafter "Def's Exhibits"].)   On November 20, 2000, Plaintiff again visited the clinic requesting to be seen by the physician on duty.  Plaintiff was informed by Defendant Bird that the schedule was full for that day but that he would be placed on the sick call schedule for the next day.  Plaintiff then walked away. (Ex. NN at ¶ 6, Def's Exhibits.)  The next day, Plaintiff returned to the clinic and was seen by Defendant Dr. Witwer.  (Exs. F, G, Def's Exhibits.)

   The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact as to the allegation that Defendant Bird knew of and disregarded a serious risk to Plaintiff's health.  The burden therefore shifts to

9

1  Plaintiff to establish that a genuine issue as to any material fact actually does exist. See
2  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
3        As stated above, in attempting to establish the existence of this factual dispute, Plaintiff
4  may not rely upon the mere allegations or denials of his pleadings, but is required to tender
5  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
6  support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
7  First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747,
8  749 (9th Cir. 1973).
9        In opposition, Plaintiff states that the denial of treatment actually started in 1997, and not
10 in 2000, but that he only experienced worse pain on November 15, 2000. (Opposition at 2-3.)
11 Plaintiff states that Defendants have misunderstood his allegations because English is a second
12 language to him and he did not have the assistance of an interpreter at his Deposition.  Id. With
13 regard to the allegations against Defendant Bird , Plaintiff states that despite the fact that he had a
14 pass from his work supervisor, Defendant Bird was "totally indifferent to his need for medical
15 treatment." (Opposition at 6:20-22.)   Plaintiff cites to his Deposition at pg. 87 in support of his
16 assertion that Defendant Bird was deliberately indifferent.
17       The Court has reviewed the evidence presented by both parties and finds Plaintiff has
18 failed to meet his burden if establishing a disputed issue of fact.  First, Plaintiff's contentions that
19 his claims for relief stem from 1997 is unpersuasive.  The Court has examined the Amended
20 Complaint and finds that Plaintiff made clear that the events giving rise to his Eighth
21 Amendment claim stem from the injury sustained on November 15, 2000.  The Court and
22 Defendants do not disregard that Plaintiff had pain beginning in 1997.  However, the allegations
23 against the named Defendants in the Amended Complaint clearly concern an alleged disregard of
24 medical need beginning on November 15, 2000, the date Plaintiff injured or re-injured himself
25 while working at the PIA.
26       With respect to the allegation against Defendant Bird, Plaintiff concedes in his
27 Opposition and Amended Complaint that he presented to the clinic on November 15, 2000, and
28 was seen by Dr. Shapiro who prescribed him medication. Ex. A-1, Plaintiff's Opposition;

Amended Complaint at 12. Thus, Plaintiff he was not turned away by Defendant Bird *on November 15, 2000*, as he alleges. It is an undisputed fact that when Plaintiff presented to the clinic on November 20, 2000, he was told that the schedule was full and he would have to return the next day. (Undisputed Facts Nos.[hereinafter "UF#"] 7, 8. This, Defendant Bird concedes. The evidence shows, however, that Plaintiff returned to the clinic the next day and was examined and treated by Defendant Dr. Witwer who prescribed him more pain medication. (Ex. F, G, Def's Exhibits; Amended Complaint at 12.) That Plaintiff was told to return to the clinic the next day alone is insufficient to establish an Eighth Amendment violation. Plaintiff provides no evidence that his pain was sufficiently serious such that his physical appearance alone would put Defendant Bird on notice that he needed immediate medical attention.

Further, although a delay in providing medical care may manifest deliberate indifference, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), Plaintiff must demonstrate that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Plaintiff presents no evidence that waiting 1 day to be examined by a physician was harmful. Accordingly, based on the above, the Court finds Defendant Bird is entitled to Summary Judgment.

### b. Defendant Dr. Sydenstricker

The Amended Complaint is unclear as to the allegation against Defendant Sydenstricker. However, Plaintiff makes clear in his Deposition that his claim against Defendant Dr. Sydenstricker is that he was deliberately indifferent for not ordering an MRI sooner, in 1997. (Ex. LL, Def's Exhibits.)[5]

Defendant Sydenstricker contends that he was not deliberately indifferent to Plaintiff's need because he in fact received an MRI on December 22, 2000, only 23 days after it was ordered by Dr. Camiso. (Ex. M, Def's Exhibits.) In addition, the undisputed facts show that Dr.

---

[5] Refers to Plaintiff's deposition at pg. 43, lines 19-25.

1  Sydenstricker did not examine Plaintiff for this injury between November 15, 2000, the date of
2  his injury, and December 22, 2000, the date of the MRI.  (UF#s 6-12)  The Court finds that
3  Defendants have met their initial burden of informing the Court of the basis for their Motion, and
4  identifying those portions of the record which they believe demonstrate the absence of a genuine
5  issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as
6  to any material fact actually does exist.  See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
7  475 U.S. 574, 586 (1986).

8  As stated above, in attempting to establish the existence of this factual dispute, Plaintiff
9  may not rely upon the mere allegations or denials of his pleadings, but is required to tender
10 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
11 support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
12 First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747,
13 749 (9th Cir. 1973).

14 In opposition, Plaintiff states that Defendant Dr. Sydenstricker should have given him an
15 MRI in 1997.  (Opposition at 5:23-24.)  He further complains that Dr. Sydenstricker's actions fell
16 below an objective standard of reasonableness.  Plaintiff presents no evidence, however, that
17 Defendant Sydenstricker was deliberately indifferent to his medical needs for failing to provide
18 him with an MRI.

19 As noted above, it is undisputed that when Plaintiff further injured his back on November
20 15, 2000, he received medical attention and an MRI was ordered by Dr. Camiso and performed
21 on December 22, 2000.  (UF#s 6, 8, 10, 11, 12.)  Dr. Sydenstricker did not examine Plaintiff for
22 this injury until January 8, 2001, well after the injury occurred on November 15, 2000, and the
23 MRI was given.  (UF# 14.)

24 The Court notes that Plaintiff asserts in his Opposition that the Amended Complaint also
25 encompasses acts or omissions that occurred in 1997.  Plaintiff states specifically that Defendant
26 should have ordered an MRI in 1997.  The Court finds that this allegation is beyond the scope of
27 this action in that the claims asserted in the Amended Complaint concern only the acts or
28 omissions beginning on November 15, 2000.  While it is true that Plaintiff complains generally

in his Amended Complaint[6] that he experienced pain since sometime in 1997 and felt like he was not getting adequate care, such allegation alone, even construed liberally, is insufficient to state a cognizable claim for relief as Plaintiff did not link any named Defendant to a specific act or omission between 1997 and November 15, 2000.[7] Even assuming the Amended Complaint encompasses the time frame of August 1997, Plaintiff provides no evidence to create a genuine issue of disputed fact warranting trial on his claim against Defendant Sydenstricker. As noted above, differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981). Plaintiff's contention that Defendant Sydenstricker should have ordered an MRI is a disagreement with the diagnosis and does not state a cognizable claim for relief. Accordingly, Court finds Plaintiff has failed to meet his burden and Defendant Sydenstricker is entitled to summary judgment.

### c. Defendant Dr. Witwer

Again, Plaintiff's allegations against Defendant Dr. Witwer are unclear from the Amended Complaint. The Court has reviewed Plaintiff's Amended Complaint and finds that the only mention of Dr. Witwer is with respect to examinations given by him in the Statement of Facts. Nowhere in the Complaint does Plaintiff allege specifically any act or omission by Defendant Witwer that Plaintiff believes amounted to an Eighth Amendment violation.

---

[6] Plaintiff's Statement of Facts lists in the first paragraph that he had a lower back problem that began in 1997 and that Dr. Rexin was able to provide pain relief by medication. Plaintiff next speaks to the incident of November 15, 2000, and all subsequent medical examinations subsequent to that date. (Amended Complaint at 11.)

[7] The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

Defendants present evidence of Plaintiff's concession that he could not recall anything that Defendant Witwer might have done wrong medically and that he named him solely because he was "an employee of the medical facilities" at Sierra Conservation Center. (Ex. LL, Def's Exhibits.)[8]

Although Plaintiff opposed the Motion for Summary Judgment, his Opposition does not address any act or omission by Defendant Dr. Witwer, does not mention him by name and does not point to evidence creating a disputed issue of material fact. Accordingly, based on the undisputed evidence, the Court finds that Defendant Witwer is entitled to summary judgment as a matter of law.

### 3. State Law Claims

Defendant urges the Court to decline to consider the supplemental state law claim. However, this Court found that the Amended Complaint stated only an Eighth Amendment claim. (Court Doc. 6.)[9] To the extent Defendants are addressing other allegations made during Plaintiff's deposition or in his Opposition, those claims are not part of the case as no request to amend has been made or permission to amend granted.

## E. CONCLUSION AND RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that Defendant's Bird, Sydenstricker and Witwer's Motion for Summary Judgment be GRANTED and they be DISMISSED from the action.[10]

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with

---

[8] References Plaintiff's Deposition at p. 105:7-18, p. 106:1-7.

[9] Finding the Amended Complaint only stated a cognizable Eighth Amendment Claim and dismissing the due process and supervisory liability claims.

[10] Should the District Court adopt these Findings, only Defendant Rexin would be the sole Defendant in the action.

a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will t hen review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 13, 2006**                         /s/ Sandra M. Snyder
icido3                                           UNITED STATES MAGISTRATE JUDGE